MARTIN J. AMBACHER (State Bar No. 144596)
martin.ambacher@mcnamaralaw.com
JOHN C. ADAMS (State Bar No. 230373)
john.adams@mcnamaralaw.com
McNAMARA, NEY, BEATTY, SLATTERY,
BORGES & AMBACHER LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendants
CITY OF CONCORD and ANDREA OUSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAART PROGRAMS, INC., BAYMARK HEALTH SERVICES, INC., AND ADDICTION RESEARCH AND TREATMENT, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CONCORD, ANDREA OUSE, and DOES 1 through 10,<br><br>Defendants. | Case No. 3:18-CV-04652 LB<br><br>**DEFENDANTS CITY OF CONCORD AND ANDREA OUSE'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Date:         October 18, 2018<br>Time:        9:30 a.m.<br>Courtroom: C<br>Judge:       Hon. Laurel Beeler |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 18, 2018 at 9:30 a.m. in Courtroom C on the 15th Floor of 450 Golden Gate Avenue, San Francisco, California, defendants City of Concord and Andrea Ouse, by and through their attorneys of record, will and hereby do move this Court for an order dismissing causes of action within the Complaint for Injunctive and Declaratory Relief and Damages ("Complaint") without leave to amend.

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted because plaintiffs have failed to exhaust administrative remedies; and on the grounds that the Complaint fails to state a

DEFENDANTS' NOTICE OF MTN, MTN, AND
MEMO OF P'S & A'S ISO MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6)

claim upon which relief can be granted for the fifth claim for violation of California law. The motion is based on this Notice and Memorandum of Points & Authorities, the Declaration of John C. Adams, and such further evidence and oral argument as may be presented.

## MEMORANDUM OF POINTS & AUTHORITIES

### I. ISSUES PRESENTED

1. Whether the Complaint fails to state a claim upon which relief can be granted as to all claims because plaintiffs failed to exhaust administrative remedies available under the City of Concord's Development Code.

2. Whether the Complaint fails to state a claim upon which relief can be granted as to the fifth claim for violation of state law against the City of Concord because it is immune from liability under California Government Code section 818.4.

3. Whether the Complaint fails to state a claim upon which relief can be granted as to the fifth claim for violation of state law against Andrea Ouse because she is immune from liability under California Government Code section 821.2.

### II. STATEMENT OF FACTS

**A.   THE COMPLAINT**

Plaintiff BAART Programs, Inc. ("BAART") is a subsidiary of plaintiff Baymark Health Services, Inc. ("Baymark"). Dkt. No. 1, Exh. 1 ("Complaint"), ¶ 9. BAART provides "methadone maintenance services" at several California locations, including Contra Costa County, and it operates clinics in five other states as well. *Id.* ¶ 8. Its "methadone maintenance program is operated as a local medical clinic targeted at chronic opioid users who have failed to respond to other types of treatment." *Id.* ¶ 11. Plaintiff Addiction Research and Treatment, Inc. is a subsidiary of BAART. *Id.* ¶ 13.

Defendant City of Concord ("City") is a political subdivision of the State of California, and defendant Andrea Ouse is the City's Community and Economic Development Director. *Id.* ¶¶ 14, 15.

On or about May 14, 2015, BAART submitted a letter to the City describing its services in connection with the potential use of a property at 1957 Parkside Drive in Concord. *Id.* ¶ 26. On

DEFENDANTS' NOTICE OF MTN, MTN, AND MEMO OF P'S & A'S ISO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)   2

or about May 18, 2015, the City informed BAART that the proposed use was a "medical office" (under the City's Development Code), permitted at the Parkside Drive location without a discretionary permit. *Id.* ¶ 27.

On or about June 2, 2015, the City requested additional information, specifically whether BAART would provide services at a reduced cost. After receiving a response, the City informed BAART that its use would actually be a "medical clinic" and not a "medical office" under the Development Code and would not be permitted at this location. *Id.* ¶ 28.

BAART then searched for another site where a "medical clinic" would be permitted as a matter of right within the City of Concord. *Id.* ¶ 29. In other words, BAART wanted to avoid a location where it needed to apply for a use permit.

In February 2016, BAART contacted the City regarding a second location, and the City confirmed that BAART's proposed use would be classified as a "medical clinic." *Id.* ¶ 30.

On or about July 5, 2017, BAART submitted an official form to the Community and Economic Development Department with regard to a third potential site, 2152-58 Solano Way, Concord, known as the "Solano Plaza" shopping center. *Id.* ¶ 31. That same day, the City responded in writing that the address was zoned "neighborhood commercial" and a "medical clinic" was a permitted use, allowed to occupy up to 20% gross area of a shopping center or 20% street frontage of one building. *Id.* ¶ 32. Based on the City's representations, Addiction Research and Treatment entered into a lease agreement on October 17, 2017 for the property with rent commencing on April 15, 2018. *Id.* ¶ 33.

In mid-November 2017, Concord residents contacted the City to complain about a proposed methadone clinic in their neighborhood. *Id.* ¶ 35. On or about November 17, 2017, Ms. Ouse sent a letter to the owner of Solano Plaza stating that the City had just recently learned that space was leased to Baymark Health. *Id.* ¶ 36. Acting in her official capacity, Ms. Ouse issued a formal determination stating that BAART's proposed use is not a "medical clinic," but a "social service facility, community organization." *Id.* ¶ 37. In her letter, she further stated that an administrative permit is required for a "social service facility, community organization" within a neighborhood commercial zoning district. *Id.* ¶ 37.

DEFENDANTS' NOTICE OF MTN, MTN, AND MEMO OF P'S & A'S ISO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)   3

Issuance of an administrative permit is at the discretion of the Community and Economic Development Department and is subject to appeal by any member of the public to the Planning Commission and then City Council. *Id.* ¶ 39. Thereafter, BAART and representatives of the City entered into negotiations to settle the matter, but after several months the parties were unable to come to an agreement. *Id.* ¶ 42.

The determination by the City and Ms. Ouse proximately caused actual injury and damage to plaintiffs. *Id.* ¶ 44. Additionally, plaintiffs and the patients they intend to serve will suffer irreparable harm on account of discrimination due to disability. *Id.* ¶ 46. Finally, they assert that they have no other adequate remedy to redress the continuing violation of their rights. *Id.* ¶ 47.

Plaintiffs allege six claims for relief: (1) intentional violation of the Americans with Disabilities Act; (2) discriminatory impact violation of the Americans with Disabilities Act; (3) violation of the Rehabilitation Act section 504; (4) violation of due process and equal protection of the law; (5) violation of California law; and (6) declaratory judgment.

**B.   The City of Concord's Development Code**

The City of Concord's Development Code defines the use classification for a "medical clinic" as follows:

> "Medical clinic" means an outpatient facility operated by one or more physician, dentist, or other licensed health care practitioner that provides medical, dental, or counseling services to the public generally at reduced cost. Concord Mun. Code § 18.20.020.[1]

The Development Code defines a "social service facility, community organization" as follows:

> "Social service facility, community organization" means a noncommercial facility that provides services or activities undertaken to advance the welfare of citizens in need, typically run by a nonprofit organization, a public agency, or by a contract with a public agency.
> This classification may include supporting office uses, supporting medical office or health clinic uses, supporting vocational or trade training, child care services, supporting personal services, nonmedical substance abuse recovery and counseling services,

---

[1] Excerpts from Concord, Cal., Municipal Code, Title 18, Development Code are attached as **Exhibit A** to the Declaration of John C. Adams.

DEFENDANTS' NOTICE OF MTN, MTN, AND MEMO OF P'S & A'S ISO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)         4

and/or a food and goods distribution facility. This classification does not include emergency shelters, homeless shelters (see "Emergency, Homeless Shelter"), food banks, blood banks, and crisis centers or facilities that provide overnight treatment or observation services. Concord Mun. Code § 18.20.020.

These use classifications do not list every activity that may be within a given classification, and if a particular land use is identified as an example of one category but exhibits the characteristics of another, the latter classification shall apply:

> Use classifications describe one or more uses of land having similar characteristics but do not list every use or activity that may appropriately be within the classification. If a particular land use is identified as an example of one category but exhibits the characteristics of another, the use shall be categorized under the latter. Concord Mun. Code § 18.20.010.

It is the Planning Division's responsibility to determine whether a proposed use is or is not included within a given classification based on the characteristics of that use; and a proposed use shall not be deemed within a particular classification if its characteristics are substantially incompatible with those of the typical uses in that classification:

> The planning division shall make the determination as to whether a specific use is included or not included within a classification based on the characteristics of the use. A specific use shall not be deemed to be within a classification whether or not named within the classifications if its characteristics are substantially incompatible with those of the typical uses named within the classification. Concord Mun. Code § 18.20.010.

The Development Code defines "Director" to mean the director of Community and Economic Development. Concord Mun. Code § 18.20.030. And the definition of "Planning Division" specifically includes "decisions by the division director". Concord Mun. Code § 18.20.030.

Importantly, any decision of the Planning Division may be appealed to the Zoning Administrator, and any decision of the Zoning Administrator may be appealed to the Planning Commission, and any decision of the Planning Commission may be appealed to the City Council. Concord Mun. Code § 18.510.010(A). An appeal may be initiated by the applicant, property owner, or any interested person. Concord Mun. Code § 18.510.020. The appellate body shall

DEFENDANTS' NOTICE OF MTN, MTN, AND    5
MEMO OF P'S & A'S ISO MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6)

conduct a "de novo" hearing, and may consider new material and testimony in addition to the plans and materials previously submitted. Concord Mun. Code § 18.510.050(C). After the hearing, the appellate body shall affirm, modify, or reverse the appealed decision, or remand to cure a deficiency in the record or prior proceedings. Concord Mun. Code § 18.510.050(E)(1). The appellate body's decision shall be supported by the weight of the evidence. Concord Mun. Code § 18.510.050(E)(2).

### III. ARGUMENT

#### A. LEGAL STANDARDS

##### 1. Federal Rules of Civil Procedure, Rule 12(b)(6)

A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). While this pleading standard does not require detailed factual allegations, it does demand more than an unadorned the-defendant-unlawfully-harmed-me accusation. *Iqbal* at 1949. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 127 S.Ct. at 1965.

The failure to exhaust administrative remedies is a proper basis for dismissal pursuant to a Rule 12(b)(6) motion. *Taylor v. U.S. Treasury Dept.*, 127 F.3d 470, 478, fn. 8.

### 2. Dismissal Without Leave to Amend

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend. However, leave to amend is not warranted if an amendment would be futile because the pleading could not possibly be cured by the allegation of other facts. *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (denying leave to amend where plaintiff had failed to state a claim for defamation); see also *Conway v. Geithner*, 2012 WL 1657156 *2 (N.D. Cal. 2012) (denying leave to amend in case of absolute immunity because the amendment would be futile).

### B. PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

#### 1. All Pleaded Claims Should Be Dismissed Because Plaintiffs Failed to Exhaust Their Administrative Remedies

Plaintiffs baldly assert that they have no adequate remedy, but that assertion is belied by the pleaded facts and the Development Code. The Development Code sets forth a procedure whereby any interested person including an applicant may contest a decision made by the Planning Division, including a decision made by the Community and Economic Development Director. Since there is a clear administrative remedy available to plaintiffs, their lawsuit should be dismissed for failure to exhaust administrative remedies.

The doctrine of exhaustion of administrative remedies requires "that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira v. Dist. Court of Appeal*, 17 Cal.2d 280, 292 (1941). "The jurisprudential exhaustion doctrine is a 'long settled rule of judicial administration [which mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Taylor v. U.S. Treasury Dept.*, 127 F.3d 470, 476, quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).

The doctrine is supported by a number of strong public policy considerations:

/////

> The doctrine serves (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Taylor* at 476-477, quoting *Patsy v. Florida Int'l Univ.*, 634 F.2d 900, 903 (5th Cir. Jan. 1981).

The subject action should be dismissed without prejudice, and plaintiffs required to exhaust available administrative remedies before pursuing litigation. The parties allegedly engaged in some settlement discussions, but there are no pleaded allegations that plaintiffs followed the appeals process as prescribed by ordinance. None of the use classifications in the Development Code are a "perfect" fit for plaintiffs' methadone clinic. If the Planning Division erred in its interpretation or application of the Development Code, the City should have an opportunity to correct its mistake before this Court becomes involved, perhaps unnecessarily.

Although courts have discretion in applying the doctrine, that "discretion is circumscribed in that a court should only excuse a claimant's failure to exhaust administrative remedies in extraordinary circumstances." *Taylor* at 477. The failure to exhaust administrative remedies may be excused in several situations, including where "(1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim." *Id.* However, none of these exceptions apply.

First, the available remedy is not inadequate. To the contrary, if successful, plaintiffs would be allowed to proceed with their planned methadone clinic. Second, plaintiffs are not making a facial challenge to the legality of the Development Code; instead they argue that the

DEFENDANTS' NOTICE OF MTN, MTN, AND   8
MEMO OF P'S & A'S ISO MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6)

Development Code is illegal as applied in this one situation. Third, plaintiffs have not alleged that the administrative process itself is unlawful in any way. And finally, there is no reason to believe that making an appeal to the Zoning Administrator, Planning Commission, or City Council would be futile. The futility exception only applies if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case. *Tejon Real Estate, LLC v. City of Los Angeles*, 223 Cal.App. 4th 149, 158 (2014). And that is certainly not the case here because no one can say what the authorities above Ms. Ouse will do when presented with a formal appeal.

### 2. The City and Ms. Ouse Are Immune From Liability Under State Law and the Claim for Violation of California Law Should Be Dismissed

Plaintiffs allege that the City and Ms. Ouse are liable under California Civil Code sections 51, 53, 54, and 54.1. Plaintiffs further allege that they are liable under California Government Code sections 12955(l) and 12955(m). However, in cases involving permitting or similar authorizations, there are specific state law immunities that protect both the City and Ms. Ouse from liability.

California Government Code section 818.4 reads as follows:

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

California Government Code section 821.2 reads as follows:

> A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

An "enactment" is defined by California Government Code section 810.6 as a "constitutional provision, statute, charter provision, ordinance, or regulation."

DEFENDANTS' NOTICE OF MTN, MTN, AND MEMO OF P'S & A'S ISO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)        9

Plaintiffs allege that Ms. Ouse erred when she incorrectly determined that the proposed use was a "social service facility, community organization" requiring an administrative permit. Ms. Ouse is the Community and Economic Development Director, and the Development Code references to the "Planning Division" specifically include decisions made by her. What's more, there is no disputing that the Planning Division determines use classifications. Therefore, the City and Ms. Ouse cannot be held liable for plaintiffs' alleged injuries based on her application of the Development Code. They are immune from liability for the pleaded violations of State law and are entitled to dismissal of this claim with prejudice.

## IV. CONCLUSION

This case is ripe for dismissal because plaintiffs failed to exhaust available administrative remedies. The dismissal should be without prejudice so plaintiffs may re-file their lawsuit if unsuccessful in proceedings under the Development Code. In addition, defendants are entitled to a dismissal with prejudice of the claim for violation of California law because of immunities that apply in this very situation.

Respectfully submitted,

Dated:  September 12, 2018

McNAMARA, NEY, BEATTY, SLATTERY,
BORGES & AMBACHER LLP

By: *John C. Adams*
Martin J. Ambacher
John C. Adams
Attorneys for Defendants
CITY OF CONCORD and ANDREA OUSE